## UNITED STATES v. KOPLIK.

### (Circuit Court, S. D. New York. May 15, 1907.)

**1. ARMY AND NAVY—OFFENSES BY CIVILIANS—RECEIVING PUBLIC PROPERTY IN PLEDGE—CONSTRUCTION OF STATUTE.**

In that provision of Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3674]. which makes it a criminal offense if any one "knowingly" purchases or receives in pledge from any soldier clothes or other public property, such soldier not having the lawful right to pledge or sell the same, the word "knowingly" applies only to the question whether a person purchasing or receiving such property in pledge knew, or should have known from facts which put him on inquiry, that the person offering the same was a soldier.

2. SAME.
   It is not a defense to a prosecution, under such statute, for receiving property in pledge from a soldier still in the service, that such property consisted of clothing which he had paid for out of his clothes allowance, or which had been charged against it.

## On Indictment for Receiving in Pledge Soldiers' Clothing.

The defendant, Charles Koplik, was a member of a firm conducting a pawnbroking business in the city of New York. He was indicted under section 5438 of the Revised Statutes [U. S. Comp. St. 1901, p. 3674] for having at his place of business knowingly received in pledge, from a soldier stationed at Ft. Schuyler, N. Y., an olive drab overcoat, which the soldier did not have the right to pledge or sell. The transaction was admitted by the defendant, his version of the occurrence being: That the soldier came into the pawnbroking establishment, one Saturday afternoon, late in the day, and wished to borrow a sum of money upon an overcoat; that a loan was made to the extent of $3, upon which, according to the New York state statute, nine cents could be charged as interest, if the goods were redeemed within 30 days; that the soldier upon being asked if he would like to have extra care taken of his coat, which extra care it was testified was to pack it in a moth-proof chest, was told that the charge for such extra care would be a dollar. To this the soldier agreed, and a receipt was taken, No. 14, for the dollar paid for extra care. While the soldier was talking with a companion of his, a woman pawned a diamond ring, and within a few moments after, according to the defendant's testimony, the second soldier pawned his overcoat in a similar way. The defendant testified that an extra care ticket, No. 15, was given to the woman, who pawned the diamond ring, and an extra care ticket, No. 16, to the second soldier for his overcoat. Some of the witnesses for the defendant testified that the soldier said he was a discharged soldier, and would pay when he got his money from the government. The defendant testified that he remembered nothing of that conversation, while another witness for the defendant said that the soldiers promised to redeem the goods on pay day. The two soldiers testified that the overcoats were pawned as much as an hour and a half apart, that they did not remember the transaction about the diamond ring, and were positive that they said nothing about being discharged soldiers. It was undisputed that both soldiers were in uniform, and that the overcoats pawned were those which they were wearing.

Henry L. Stimson, U. S. Atty., and Francis W. Bird, Asst. U. S. Atty.

Clarence S. Houghton, for defendant.

CHATFIELD, District Judge (the facts having appeared by the testimony substantially as above), charged the jury as follows: The province of a juror is not a simple one. The decision upon questions of fact is not of itself easy, but, when these questions that are laid before you are involved with interpretations of law, the government asking the jury to try to assume what its ideas may be as to the aspect of a certain statute or certain law, while the defendant tries throughout the case to have the jury understand that the law is to be construed in a different way, which he claims the court will charge, when later the court takes a third position in explaining what its idea of the law is, and then the jury is called upon to remember and sift out these different questions as to what the statute means, and what the law is, and as to whether the defendant is to be treated from the standpoint of what this law, as a law, is intended to be, it seems to me entirely wrong to ask a jury to carry the tes-

timony in their minds, not having it to read, not having the law before them, and having none of these questions so that they can pass upon them as the attorneys who have worked up the case, and I, as judge, who must instruct on that law, can do and to apply this testimony to all of these various views of the statute. It is needlessly making the duty of the juror arduous to inject into the case such questions as whether a business man should be sent to prison. That is something that the jury need not worry about. As to questions of public policy, questions as to what situation the statute is called upon to meet, those are the points of view from which the jury is to look at the evidence in the case. But beyond that, if the jury have not confidence in the court, or if you have not the willingness and ability to pass upon the facts as the law is laid down, you should not try to correct the situation by the individual views of jurors. I say that because throughout the case I have tried to indicate that these matters should not be brought in to complicate. The jury must take the law as charged by the court. Much argument in this case has been directed to the different phases of life, as questions of fact. But the testimony of the witnesses upon the stand was comparatively short, and you will remember, in looking upon that testimony and weighing it, that this defendant, a man of good reputation, and a man presumed therefore to be of good character, comes here presumed to be innocent and with all the benefits of that good reputation. He is charged under an indictment with having done something which makes him responsible under this statute, and that evidence is presented to you, with the burden upon the government of satisfying you beyond a reasonable doubt that he did the act with which he is charged. Your province is to say whether you are satisfied beyond a reasonable doubt that a man with such a character, or with such a presumption, has been shown by the evidence to have committed the act, and on that you will base your verdict.

Now, as to the statute, we have had discussions enough so that you can presume that it is a comprehensive, a drastic, statute. You have seen the witnesses for the government, these recruits; you have been able to judge, from the manner of giving their testimony, what the facts were, what weight you will give their testimony. You have heard the testimony of the sergeant who gave his evidence after service in the army, not as a recruit. And under all of these circumstances you can see what the situation of the soldier is, when he attempts to pledge his clothing. And then, the statute forbids the pledging or selling by a soldier, or a sailor in the case of the navy, of the arms, the equipment, ammunition, the clothing, any other public property which he does not have the lawful right to pledge or sell.

You have heard read into the case a statute giving government officers the right to seize such public property. I charge you that that section refers as well to clothing which the soldier has paid for as to powder, cartridges, rifle, and these other articles which have only been handed to him for use. The authority under this section as to the right of an army officer to go in and seize this property wherever found is a civil right. The government has a right to take possession of what is the government's, and any person disputing that right must

prove it. When you come to a criminal case, the government still has the right to seize. It has the right to charge the men with the crime. It must then show the possession of the goods. It must show the circumstances by which the act is alleged to be brought within the criminal section, and if that is shown the defendant is then put upon his proof; the question being whether the charge is proved to the satisfaction of the jury beyond a reasonable doubt.

The section under which the defendant is charged speaks of this particular matter in the following language:

"Any person who knowingly purchases or receives in pledge for any obligation or indebtedness from any soldier, clothes or other public property [I have left out the other words that do not apply to this particular matter], such soldier not having the lawful right to pledge or sell the same."

As to that last clause, "not having the lawful right to pledge or sell," the word "knowledge" or "knowing" does not apply. Whether the soldier had a right is a question of fact. If the soldier did not have the right, then the property could not be legally sold, and if a person buys that property he buys it with the prospect of its being seized. He buys it running the chances of being shown to have had knowledge that he was purchasing it from a soldier, or under such circumstances that the word "knowledge" applies, and he takes his chances as to whether the person had the lawful right to pledge or sell the same. The word "knowing" applies only to the question as to whether the man who purchased and receives in pledge the property knew that the person offering it was a soldier. You see, a soldier might be sent to sell something that might have been condemned, and, having the lawful right to sell that, knowledge as to whether he was a soldier or not, if all the circumstances were understood, would have nothing to do with the case. But if he did not have the lawful right to sell (and I charge you these soldiers did not have, as a matter of law, any right to pledge or sell this clothing until their enlistment had been terminated by either court-martial or honorable discharge), if they did not have the right to sell, then the question comes down to the transaction with the person with whom they were dealing, and the sole question is whether he knew, or whether he acted with such disregard of the circumstances that he did not try to find out, whether the man was a soldier.

To convict the defendant, you must be satisfied as to this from the evidence beyond a reasonable doubt. Of course, there are two ways of looking at the matter to start with. It is possible for you to determine that the soldiers' story is true, and that the defendant knew that these men were soldiers. It is possible as well for you to determine that the defendant's story is true, and that he in good faith believed that they were discharged soldiers. Those are the two extremes. Whichever way you make up your mind, if you arrive at either one of those conclusions, that way your verdict will go. But if you should believe, as told by the soldiers, that they went in and offered their clothing to be pawned, that they said nothing as to whether they were discharged soldiers, or whether they said that they were discharged soldiers, and the defendant knew better, or, whatever you find as to the facts of that, if the defendant had reason, as a reasonable man, to know

that he was dealing with a soldier, or to make further inquiry, if he had no regard for whether the soldier had been discharged or not, if he disregarded taking the precautions a reasonable man would, so that he could be charged with knowing (if he had attempted to find out) that he was dealing with a soldier, then he is responsible under this statute.

You have heard the different conflicts of testimony; heard of these slips for extra care, one of them numbered a certain thousand and fourteen, and the other a certain thousand and sixteen, that were given, one side says, something like an hour apart or an hour and a half, and the other says between 5:00 and 5:15. The defendant explains the transaction that occurred between these two Nos., 14 and 16, relating to a diamond ring, and that these transactions were with reference to getting extra care for the overcoats, in relation to garments to be put away; the defendant thereby explaining, or attempting to explain, the fact that the numbers were but two apart.

You have heard the testimony of one soldier that Mr. Isidore Koplik (the witness, not the defendant) was not in the store so far as he remembered, and the other witness identifying Mr. Isidore Koplik; the statements that the soldiers came there on two different occasions as far as the pawning is concerned; and the different discrepancies as to the points in which the stories are not alike. You have heard the testimony by the defendant, who says that nothing was said about pay day or money to be paid to these men by the government, of Mr. Isidore Koplik, who testifies that they said they were discharged soldiers, and that they were to get their money from the government, and of the clerk, who says they stated that they would redeem the goods on pay day; the soldier witnesses saying there were men in the store, but not remembering the woman being there. And all these points you will remember and try to determine what in your opinion were the facts, of what facts you are persuaded beyond a reasonable doubt, and having determined those facts you will consider whether Mr. Koplik had knowledge that he was dealing with soldiers, or that he was so informed that the situation was such that he disregarded the duty which this statute places upon him and everybody else of acting as a reasonable man would in using the opportunities offered by the situation so as to know whether he is dealing with a soldier or not.

I think I have sufficiently charged you that good reputation is always to be considered; also, that the presumption of innocence goes with the defendant all the way through, and is to be considered by you in regarding the question, whether the burden of proof has been borne so as to satisfy you beyond a reasonable doubt. If you, from the demeanor of any of the witnesses or his testimony, have believed that he willfully and deliberately testified falsely as to any material matter, you may disregard such portion of that witness' testimony, or all of it, as you see fit, or give it such weight as you see fit.

Mr. Houghton: I will respectfully request the court to charge that the charge of $1 for extra care was not made for two or three weeks' care, but for the whole time.

The Court: The jury will remember the evidence as to what that was. There is no question in this case, gentlemen, as to the legality or

illegality of charging a dollar for storage. Whether the pawnbroker should be satisfied with nine cents interest on a loan that is conceded by all parties might be but a month in duration, that is a matter for the state law. The pawnbroker, as far as this case was concerned, was within his rights. The question as to the contradiction about the witnesses being asked if they wanted extra care, and the pawnbroker stating that they requested extra care, is merely a discrepancy in the testimony to be considered in finding out what happened. The pawnbroker, as far as this case is concerned, had a right to add that dollar, if it was assented to by the soldiers.

Mr. Houghton: I request the court to charge that the fact that Richards or Donahue, or either of them, may have been intoxicated, or partly intoxicated, at the time of the pawning of any clothing, should not prejudice the jury against the defendant.

The Court: It is evidence as to the whole situation both upon the question of their memory and the acts of the defendant.

Mr. Houghton: I further request that, if the jury find that the two coats in question were paid for by Richards and Donahue out of their clothes allowance, the jury should acquit.

The Court: I refuse to so charge.

Exception by Mr. Houghton.

Mr. Houghton: That if the jury find that the two coats in question were charged up by the government against Donahue and Richards, that they were their own property, and the jury should acquit.

The Court: I refuse to so charge.

Exception.

Mr. Houghton: If the jury believe that Donahue and Richards stated that they were discharged soldiers, Koplik was under no obligation to ask to see their discharge papers, and the jury should acquit.

The Court: I will charge that he was under no obligation to compel them to produce their discharge papers. The question as to how far a reasonable man would find out about the situation is one the jury will have to determine.

Exception.

Mr. Houghton: Further, the fact that Donahue and Richards were in uniform was not of itself notice to the defendant that they were in the service of the United States government.

The Court: I will charge that the fact that a man has on a uniform is not conclusive proof that he is actually at that time in the service. I refuse to charge whether it is notice except as I have already explained.

Exception.

Mr. Houghton: I will also ask your honor to charge that at the time of the arrest of this defendant he was not bound under any law of the United States to make any statement.

The Court: He was not bound, and it is proper to warn a man not to make a statement. What the man does should, of course, be considered by the jury in determining his frame of mind and knowledge of the situation, but it should not be held against him if he keeps quiet.

Mr. Houghton: I will further request the court to charge—I think you have already touched upon it, but I would like to urge my request—that the defendant must have known at the time that the soldier pledged the garment that he was a soldier of the United States.

The Court: I refuse to charge, except as I have already charged. Exception.

Mr. Houghton: I further request the court to charge that the defendant must have known at the time the property was pledged that the property was public property.

The Court: No; I refuse to so charge.

Exception.

Mr. Houghton: I further request the court to charge that the defendant must have known at the time the pledge was made by the soldier that the soldier had no right to pledge them.

The Court: I refuse to so charge. The defendant took his chances on that.

Mr. Bird: I request that your honor charge that under the law the defendant has no right to accept more than 3 per cent. interest a month on any loan.

The Court: I so charge. If there are no further requests, the jury will retire.

The jury brought in a verdict of guilty, and a sentence of $1,000 fine was imposed, which was paid by the defendant.